**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Sierra Petroleum Co., Inc., an Illinois corporation, | Civil No. 07-1112 (DWF/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Pats 66, Inc., d/b/a Pat's Shell; Patrick D. Meyer, an individual; and Cindy D. Meyer, an individual, | |
| Defendants. | |

_____

Mark Blumstein, Esq., Moises Melendez, Esq., and Paula J. Phillips, Esq., Gordon Hargrove & James, PA; and Russell S. Ponessa, Esq., Hinshaw & Culbertson, LLP, counsel for Plaintiff.

Ansis V. Viksnins, Esq., and Sarah B. Stroebel, Esq., Lindquist & Vennum PLLP, counsel for Defendants.

_____

## INTRODUCTION

This matter came before the Court on April 5, 2007, pursuant to a Motion for a Preliminary Injunction[1] brought by Plaintiff Sierra Petroleum Company, Inc. ("Sierra"). Sierra seeks an order enjoining Defendants Pat's 66, Inc., d/b/a Pat's Shell, Patrick Meyer, and Cindy Meyer (collectively, "Defendants"), from offering, advertising, and selling non-Shell fuel at the Shell station; ordering removal of any competing petroleum supplier marks at the station; ordering compliance with the express terms of the supply

---

[1] The matter was initially brought as a Motion for Temporary Restraining Order, but upon the parties' consent, the Court will treat it as a Motion for Preliminary Injunction.

agreement between Sierra and Defendants, and preliminarily enjoining Defendants from transferring the Shell station from Defendants to any buyer pending compliance with the agreement between the parties; and suspending the operation of the Shell station, which Defendants are presently operating under a competing brand, Sunoco.  For the reasons set forth below, Sierra's Motion for Preliminary Injunction is denied.

## BACKGROUND

Sierra is an Illinois corporation with its principal place of business in Illinois. Sierra is a licensed distributor for Shell Oil Corporation.

Pat's 66, d/b/a Pat's Shell, is a Minnesota corporation that has operated a gasoline station at 5952 Large Avenue NE in Albertville, Minnesota, since 1988.  Patrick and Cynthia Meyer own Pat's 66.

In 2003, after approximately fifteen years as a Phillips 66 branded station, Pat's 66 became a Shell branded station.  On August 1, 2005, Pat's 66 entered into a supply agreement for the supply of gasoline with Beaudry Oil & Service, Inc. ("Beaudry") (the "Supply Agreement").  (Decl. of James Moran in Supp. of Mo. for Inj. Relief ("Moran Decl.") at Ex. B.)   Pat's 66 purchases approximately 100,000 gallons of gasoline per month from its supplier during most of the year; this amount increases to approximately 200,000 gallons per month during the busy summer travel months.

Later, in Fall 2005, Defendants became aware that Beaudry was selling its business and that Sierra was going to become the supplier to Pat's 66.  Defendants assert

that they were never provided with documentation that Sierra had assumed the Supply Agreement between Defendants and Beaudry.[2]

Defendants assert that throughout 2006, they experienced problems with Sierra as their supplier. Defendants contend that Sierra was overcharging the station for its gasoline and taxes. In addition, Defendants assert that they experienced various operating problems with Sierra, including the manner in which Sierra processed sales transactions. Mr. Meyer asserts that he raised his concerns with Sierra as early as April or May 2006, but received no response. On December 7, 2006, James Moran, Sierra's Vice President of Sales and Marketing, met with Mr. Meyer at Pat's 66. Mr. Meyer contends that he explained the problems that had occurred with Sierra and informed Mr. Moran that Pat's 66 would terminate its relationship with Sierra if the issues were not addressed. Defendants assert that they received no response from Sierra after this meeting and that when Mr. Meyer informed Mr. Moran that the overcharging issues were unresolved, Mr. Moran indicated that he was busy with other matters. In response, Sierra contends that it inquired into Defendants' pricing concerns and found a combination of overcharges and undercharges that netted out to $39 over the course of the preceding months. Moreover, Sierra points out that Defendants never asserted that any alleged overcharges resulted in a material breach of the Supply Agreement.

---

[2]  In its Reply, Sierra provided a copy of an Assignment Agreement between Beaudry and Sierra, purportedly assigning to Sierra the rights of the Supply Agreement between Defendants and Beaudry. (James Moran's Second Decl. in Supp. of Mo. for Inj. Relief ("2nd Moran Decl.") at Ex. B.)

On December 29, 2006, Defendants entered into a Purchase Agreement with a buyer for the station. On January 8, 2007, Defendants sent a letter to Sierra, giving Sierra thirty days written notice of termination, citing Sierra's failure to follow the terms of the Supply Agreement as the reason for termination. In mid-January 2007, Mr. Meyer met with Mr. Moran. Defendants assert that Mr. Moran admitted that Sierra had charged Defendants an amount over the agreed-upon mark-up price. Defendants also contend that at this meeting, Sierra gave no indication that it expected Pat's 66 to remain a Shell station. In addition, Defendants contend that Sierra merely requested that the buyer return the Shell signs after re-branding was completed.

After the thirty-day notice period elapsed, Defendants began re-branding and re-decorating the station in expectation of the sale. According to Defendants, there are no more Shell signs or designations in the station and the station now exclusively displays Sunoco signage.[3] In addition, Sierra asserts that Defendants have closed the EFT account by which Sierra was to be paid for fuel deliveries.

In its Amended Complaint, Sierra asserts causes of action for injunctive relief related to the alleged breach of the Supply Agreement, constructive trust, and breach of contract.[4]

---

[3]  At oral argument, Sierra provided the Court with photographs of Minnesota Department of Transportation signage taken from along the highway leading up to the station that displays the Shell symbol. However, there is no evidence before the Court demonstrating that Defendants somehow control the content of that signage.

[4]  Sierra has also filed a request for leave to file a Second Amended Complaint. (Doc. No. 31.) However, that matter is not currently before the Court.

## DISCUSSION

### I. Standard of Review

Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of the factors by itself is determinative; rather, in each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *See West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the injunctive relief bears the "complete burden" of proving all of the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

#### A. Likelihood of Success on the Merits

The first *Dataphase* factor requires that the movant establish a substantial probability of success on the merits of its claim. *See Dataphase*, 640 F.2d at 114. In its motion, Sierra primarily sets forth various trademark infringement issues and further asserts that Sierra is likely to succeed on the merits of its claim that Defendants breached the Supply Agreement with Sierra. Because Sierra's Amended Complaint does not assert a cause of action for the alleged trademark infringement, the Court will only address the alleged breach of the Supply Agreement.

The Supply Agreement provided that Pat's 66 would purchase and receive all Petroleum Products at the station exclusively from Beaudry (and purportedly from Sierra

by assignment).  (Moran Decl. at Ex. B, 1.)  In addition, the Supply Agreement provided that Pat's 66 would operate the station as a Shell branded station, utilizing Shell's trademarks and brand names.  (*Id*. at R5, 3.)  The terms of the Supply Agreement extended from August 1, 2005, to March 31, 2014.  (*Id*. at 1.)  The Supply Agreement provided specific remedies in the event of a default or termination by Pat's 66, including equitable remedies, but provided no specific means by which Defendants could terminate.  (*Id*. at 3, 5, 11.)

In contrast to the extended term of the Supply Agreement, Defendants point to Minnesota Statute § 80F, which states, in pertinent part:

> A dealer may only terminate a marketing agreement if the dealer provides 90 days' written notice of termination to the supplier.  On or before the termination date, the dealer shall repay to the supplier any incentive money that is required to be repaid to the supplier upon termination pursuant to the terms of the marketing agreement.  The giving of notice of termination shall not eliminate a claim by the supplier for damages for breach of contract.

Minn. Stat. § 80F.16 (2000).  Defendants contend that § 80F allows Defendants the right to terminate the Supply Agreement with ninety days' notice, in effect mitigating the amount of damages for which Defendants may be liable to Sierra.  Moreover, Defendants contend that § 80F requires that this matter be submitted to binding arbitration.  *See* Minn. Stat. § 80F.17 ("A party shall submit the dispute to binding arbitration in accordance with the commercial rules of the Minnesota American Arbitration Association."). Undisputedly, Defendants did not provide ninety days' notice to Sierra when it attempted to terminate the Supply Agreement.

Regardless of whether the Court was to ultimately find that § 80F applies to allow Defendants to terminate with ninety days notice, Defendants did not provide such notice. Even if § 80F ultimately applies, § 80F does not necessarily preclude Sierra's right to claim damages for breach of contract. *See* Minn. Stat. § 80F.16. Considering that the Supply Agreement gave no provision for termination and that Defendants terminated the Supply Agreement before the expiration of its term and re-branded the station, the Court finds that Sierra is likely to succeed on the merits of its breach of contract claim. However, as the Court will discuss below, the remedy associated with such breach is damages, not the injunctive relief or specific performance that Sierra requests.

### B.  Irreparable Harm

The movant must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). Here, Sierra contends that it will suffer irreparable harm as a result of its loss of customer traffic, harming Sierra's business reputation and competitive position at Pat's 66. The Court finds that these are damages that are compensable by money damages and thus not the irreparable harm sufficient to demand injunctive relief. The Supply Agreement itself contemplates that in the event of a default or termination by Pat's 66, it is liable to Beaudry for lost profits, imaging funds advanced, costs, expenses, and attorney fees. (Supply Agreement at 5.) Plainly, this is a typical breach of contract action that does not merit the extraordinary remedy of injunctive relief.

**C.     Balance of Harms and Public Interest**

Because the Court finds that Sierra has not demonstrated irreparable harm, the Court need not address the two remaining factors of *Dataphase*.

For the reasons stated, **IT IS HEREBY ORDERED** that:

1.     Plaintiff Sierra Petroleum Co., Inc.'s Motion for Preliminary Injunction (Doc. No. 23) is **DENIED.**


Dated:  April 6, 2007                                                s/Donovan W. Frank
                                                                                 DONOVAN W. FRANK
                                                                                 Judge of United States District Court